```
            IN THE UNITED STATES DISTRICT COURT
                WESTERN DISTRICT OF ARKANSAS
                      FORT SMITH DIVISION


JOMICO, LLC                                              PLAINTIFF


            v.            Civil No. 08-2120


TRAXYS NORTH AMERICA, LLC                                DEFENDANT
```

### ORDER

NOW on this 28th day of August 2009 comes on for consideration the **Motion of Defendant Traxys North America, LLC to Dismiss the Complaint for Improper Venue or Alternatively to Transfer this Action to the Southern District of New York** (document #7) and the responses and replies thereto. Having reviewed the pleadings of the parties and heard oral arguments on the issues, the Court, being well and sufficiently advised, finds and orders as follows:

1.   Plaintiff Jomico, LLC (hereinafter "Jomico") brings this action against the defendant, Traxys North America, LLC (hereinafter "Traxys"), asserting a claim for breach of contract with respect to three separate agreements.  Traxys moves to dismiss the complaint, arguing that venue is improper pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure. Alternatively, Traxys argues that this matter should be transferred to the Southern District of New York pursuant to 28 U.S.C. § 1404(a).

2.   The following facts appear to be pertinent to the instant motion:

  *    The plaintiff, Jomico, LLC, is a Missouri company with its

principal place of business in St. Louis, Missouri.

*   The defendant, Traxys North America, LLC, is a Delaware company.  The principal place of business for Traxys is New York, New York.  Traxys maintains offices in three additional states, but Traxys does not have an office located in Arkansas.

*   Between January 2008 and June 2008, Jomico and Traxys entered into three (3) separate contracts for the purchase and delivery of coal.

*   The first contract, described by both parties as "7034" was entered into on January 14, 2008.

*   The contract known as 7034 calls for the delivery by Jomico to Traxys of approximately 60,000 tons of mid vol coal on or before December 31, 2008 at a price of $98 per ton.  The delivery of the coal was to take place FOB in Keota, Oklahoma.  Pursuant to the contract, Traxys would take title and possession of the coal from Jomico in Keota, Oklahoma and bear all responsibility for the coal from that point forward.

*   The contract known as 7034 is memorialized by a confirmation letter.  The confirmation letter for 7034 was drafted by Traxys and submitted to Jomico via email attachment.

*   Traxys asserts that a document entitled "General Terms and Conditions to Confirmation of Coal Agreement" is also a part of the 7034 contract.

* The "General Terms and Conditions to Confirmation of Coal Agreement" which Traxys contends is a part of the 7034 contract was also drafted by Traxys and was provided to Jomico through an email separate from the email which contained the confirmation letter.

* The "General Terms and Conditions to Confirmation of Coal Agreement" (hereinafter "GT&C #1") which Traxys contends is a part of the 7034 contract does not include a forum selection clause. It does include a choice of law provision.

* On June 5, 2008, Jomico and Traxys entered into the two (2) other separate contracts, described by both parties as "7360" and "7361".

* The contracts known as 7360 and 7361 each calls for the delivery of coal on or before August 31, 2008 and specifies that delivery will take place FOB on the Arkansas River, but does not specify a location.

* The contracts known as 7360 and 7361 are memorialized by separate confirmation letters.

* The confirmation letter for 7360 was drafted by Traxys and was submitted to Jomico through an email attachment.

* The confirmation letter for 7361 was drafted by Traxys and was submitted to Jomico through an email attachment.

* The first paragraph of the confirmation letters for both 7360 and 7361 provide the following:

> The purpose of this letter agreement/fax (this "Confirmation") is to confirm the terms and conditions of the Transaction entered into between TRAXYS'S North

-3-

> America, LLC - Carbon Division ("TNA") and Jomico, LLC ("Counterparty") (TNA and Counterparty may be collectively referred to as "Parties"), the terms of which were verbally agreed to with Janet Billups of TNA of the Trade Date specified below.

* The confirmation letters for both 7360 and 7361 also state:

> Please confirm that the terms stated herein accurately reflect the agreement reached on the Trade Date between the Parties by returning an executed copy of this Confirmation Letter . . . .

* Traxys asserts that a document entitled "General Terms and Conditions for the Purchase and Sale of Coal" is also a part of both the 7360 and 7361 contracts.

* The "General Terms and Conditions for the Purchase and Sale of Coal" which Traxys contends is a part of the 7360 and 7361 contracts was also drafted by Traxys and was provided to Jomico through an email separate from the email which contained the confirmation letters.

* The "General Terms and Conditions for the Purchase and Sale of Coal" (hereinafter "GT&C #2") which Traxys contends is a part of the 7360 and 7361 contracts includes a forum selection clause which states:

> EACH PARTY AGREES THAT IT WILL BRING ANY ACTION OR PROCEEDING IN RESPECT OF ANY CLAIM ARISING OUT OF OR RELATING TO ANY TRANSACTION, WHETHER IN TORT OR CONTRACT OR AT LAW OR IN EQUITY . . . EXCLUSIVELY IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK OR THE SUPREME COURT OF THE STATE OF NEW YORK FOR THE COUNTY OF NEW YORK . . .

\*      The GT&C #2 includes the following provision:

[t]he following General Terms and Conditions ("GT&Cs") apply to purchases and sales of Coal by Traxys North America, LLC in Transactions into the terms of which these GT&Cs are incorporated by reference.

3.      Jomico filed suit in this Court on November 6, 2008, alleging that Traxys had failed to pay for coal supplied to it by Jomico pursuant to the contracts and had failed to provide barges for Jomico to deliver the remaining coal due under the contracts. On November 26, 2008, Traxys filed suit in the Southern District of New York, alleging that Jomico had failed to deliver all of the coal due under the 7034 contract and had not delivered any of the coal due under the 7360 contract.  Apparently, the parties' dispute stems from a disagreement as to whether the coal delivered was supplied pursuant to the 7034 contract or the more expensive 7360 contract.

4.      In its current motion, Traxys argues that this matter should be dismissed for improper venue, or alternatively, transferred to the Southern District of New York. Primarily, Traxys argues that a forum selection clause controls the contractual disputes at bar; and, that pursuant to the forum selection clause, this matter should be heard in the Southern District of New York.[1]

---

[1] Under federal law, "[f]orum selection clauses are prima facie valid and are enforceable unless they are unjust or unreasonable or invalid for reasons such as fraud or overreaching." M.B. Restaurants, Inc. V. CKE Restaurants, Inc., 183 F.3d 750, 752 (8th Cir. 1999)(citing M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972)).

Similarly, under Arkansas law, a forum selection clause should be upheld unless the forum selection clause is shown to be unreasonable and unfair. Nelms v. Morgan Portable Bldg. Corp., 808 S.W.2d 314, 316-17 (1991); SD Leasing, Inc. v. Al Spain & Assoc., Inc., 640 S.W.2d 451 (1982). See also RMP Rentals v. Metroplex, Inc., 2004 WL 253511 (Ark. 2004).

Traxys also argues that, regardless of the enforceability of the forum selection clause, venue is improper in this Court.

The Court, having concerns about the enforceability of the forum selection clause and recognizing that if the forum selection clause is unenforceable general venue issues must be addressed, will forego exhaustive analysis of the forum selection clause and will instead focus its efforts on the appropriateness of venue in this Court.

5.   Venue of this diversity action is governed by 28 U.S.C. § 1391(a) which provides:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a). Subsection (2) is implicated in this instance. According to Wright, Miller, & Cooper,

> [i]n determining whether a substantial part of the events or omissions giving rise to the plaintiff's contract claim occurred or did not occur in the district, the factors that courts tend to focus on include: where the contract was negotiated or executed, where the contract was to be performed, and where the alleged breach occurred.

14D Wright, Miller, & Cooper, Federal Practice & Procedure, § 3806.1.

      6.    In the present case:

      \*    The contracts were negotiated between Traxys employees in West Virginia and Jomico employees in Missouri.

      \*    Performance took place when the coal was delivered to Traxys in Keota, Oklahoma, and when payments were made from Traxys' office in New York.

      \*    The alleged breach by Jomico occurred when it allegedly failed to deliver the remaining coal.  The 7034 contract specifies delivery of coal in Keota, Oklahoma.  The second and third contracts, 7360 and 7361, specify delivery of coal on the Arkansas River, but do not specify a location.  Delivery could have taken place at any point along the Arkansas River - in Arkansas, Colorado, Kansas or Oklahoma – and there is no evidence of any specific delivery to be made in Arkansas.

      \*    The alleged breach by Traxys occurred when it allegedly failed to pay for the coal supplied and these payment decisions were made by Traxys personnel in New York.

      Thus, neither the negotiations, performance or breach of the contracts at issue occurred in Arkansas.  Although there is evidence of various "meetings" in Fort Smith, Arkansas, it appears that the parties largely used Fort Smith simply as a meeting point and the meetings consisted of an introduction to Jomico's coal supplier in Fort Smith, and discussions regarding renegotiation or settlement efforts to salvage the contracts.  These meetings were not "events or omissions giving rise" to Jomico's breach-of-contract claims, as

required by the venue statute. Cf. <u>Arkansas Poultry Coop., Inc. v. Red Barn Sys., Inc.</u>, 468 F.2d 538, 539-41 (8th Cir. 1972) (finding insufficient contacts to establish personal jurisdiction even though defendant's representatives traveled to Arkansas to attempt to settle the dispute); <u>Cutco Indus., Inc. v. Naughton</u>, 806 F.2d 361, 368 (2nd Cir. 1986) (visits to a state to attempt renegotiation of an existing contract have no jurisdictional relevance); <u>Grynberg Petroleum Co. v. Evergreen Energy Partners, LLC</u>, 485 F. Supp.2d 1217, 1225 (D. Col. 2007) ("It would be an absurd exercise in circular logic to say that a cause of action 'arose out of' a single appearance in a forum state targeted at resolving the dispute underlying the cause of action"); <u>Slapshot Beverage Co., Inc. v. Southern Packaging Mach., Inc.</u>, 980 F. Supp 684, 688 (E.D. N.Y. 1997) (physical presence of a defendant in state for purpose of negotiating a settlement of a contractual dispute is insufficient to support exercise of personal jurisdiction).

    7.    Based on the foregoing, the Court finds that this Court is not "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated", that venue is improper, and that this matter should be dismissed pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure.

IT IS, THEREFORE, ORDERED that **Motion of Defendant Traxys North America, LLC to Dismiss the Complaint for Improper Venue or Alternatively to Transfer this Action to the Southern District of New York** (document #7) is **granted** and this matter is **dismissed.**

**IT IS SO ORDERED.**

                                                  /s/ Jimm Larry Hendren
JIMM LARRY HENDREN
UNITED STATES DISTRICT COURT